2013 ND 60

**Loren R. LARSON, Kathryn L. Lervick, and Renee L. Larson, Plaintiffs and Appellants**

v.

**Thelma Larson NORHEIM, Hans Norheim, Birgit Norheim Oyen, Kjellaug Norheim, Harald Tettum, Inge Oyen Norheim, Olav Oyen, and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon the property described in the Complaint, whether as heirs, devisees, legatees, or personal representatives of any of the above named persons who may be deceased, or under any other title or interest, Defendants and Appellees.**

No. 20120236.

Supreme Court of North Dakota.

April 8, 2013.

Elizabeth L. Pendlay, Crosby, N.D., for plaintiffs and appellants.

H. Malcolm Pippin (argued), Williston, N.D., and Charlotte J. Skar (on brief), Fargo, N.D., for defendants and appellees.

MARING, Justice.

[¶ 1] Loren Larson, Kathryn Lervick, and Renee Larson ("Larsons") appeal from a judgment dismissing their action to quiet title to certain mineral interests and finding the heirs of Hans Norheim and Thelma Larson Norheim ("Norheim heirs") are the current owners of the mineral interests. We conclude the district court did not clearly err in finding the Norheim heirs' statement of claim was sufficient to prevent the lapse of the mineral interests. We affirm.

I

[¶ 2] The Larsons are the surface owners of real property in Divide County. In 1985, Thelma Larson Norheim recorded her interest in 53.333 net mineral acres under the Larsons' property. She died in 1992, and her estate passed to her husband Hans Norheim, as her sole heir. Hans Norheim died in 1998. There was no evidence in the record about probate proceedings for either Thelma or Hans Norheim until an order of intestacy and determination of heirs was entered for Hans Norheim in October 2011.

[¶ 3] In June 2006, the Larsons signed a Notice of Lapse of Mineral Interest, asserting Hans and Thelma Norheims' mineral interests had been unused for more than twenty years. According to the Larsons' attorney, he searched for probate proceedings for Hans Norheim and Thelma Larson Norheim in various counties in North Dakota and Arizona, but was unable to find any filings. According to the attorney, he also conducted an Internet search

for information about the Norheims or any possible heirs, but was unable to find any information. The Larsons published the notice of lapse in the Divide County newspaper on May 9, 2007, May 16, 2007, and May 23, 2007. On May 25, 2007, the notice of lapse was also mailed to the Norheims' address of record.

[¶ 4] On June 27, 2007, a statement of claim for the mineral interests was recorded in the Divide County recorder's office, which provided:

> Under the provisions of Chapter 38–18.1 of the North Dakota Century Code, NO-TICE IS HEREBY GIVEN, that the undersigned does have, own and claim to be the owner of an undivided interest in and to the oil, gas, coal, clay, gravel, uranium and all other minerals of any kind and nature, unless otherwise noted, underlying the real estate described below in Divide County, North Dakota. By the rightful heirs of Hans and Thelma Norheim.

The statement of claim was signed by Olav Oyen and Inge Oyen and listed the names and addresses of Birgit Norheim Oyen, Kjellaug Norheim, Harald Tettum, Inge Oyen, and Olav Oyen as owners of the mineral interests.

[¶ 5] The Larsons caused an affidavit of lapse of mineral interest dated July 31, 2007, to be recorded in the recorder's office. The Larsons brought an action against the Norheim heirs to quiet title in the mineral interests. After a trial, the district court found the Larsons failed to comply with statutory notice requirements for abandonment proceedings because they were required to make a reasonable inquiry to provide notice of lapse to the current owner of the mineral interests, the Norheim heirs are the current owners of the mineral interests, and the Larsons failed to conduct a reasonable inquiry to locate the Norheim heirs. The court also found the Norheim heirs substantially complied with statutory requirements to preserve their mineral interests and the mineral interests were not abandoned. The court dismissed the Larsons' claim, and a judgment was entered quieting title in the mineral interests in the Norheim heirs.

## II

[¶ 6] The Larsons argue the district court erred in finding they were required to conduct a reasonable inquiry to determine the mineral owner's address under N.D.C.C. § 38–18.1–06. They claim the statute requires either notice mailed to the recorded owner's address of record or a reasonable inquiry, and they sent notice to the recorded owner's address of record. They contend that even if a reasonable inquiry was required, they conducted a reasonable inquiry and met the statutory requirements. The Larsons also argue the district court erred as a matter of law in finding the Norheim heirs' statement of claim was sufficient to preserve their interest in the minerals. They contend the statement of claim was not executed by Hans Norheim's heirs and the court erred in failing to consider their argument that the mineral abandonment proceedings created a reversionary interest in the minerals, which required application of the statute of frauds. Although the Larsons raise multiple issues, the issues relating to the Norheim heirs' statement of claim are dispositive and we need not address the Larsons' other arguments.

[¶ 7] The district court found the statement of claim was sufficient to preserve the Norheim heirs' mineral interests and the interests were not abandoned:

> I find that even though the [Norheim heirs'] document did not have the exact language and signatures that we would have liked to have seen, the [Norheim

heirs] did preserve their interest by the timely filing of their notice.

I find the [Norheim heirs'] brief persuasive on this issue and will not simply reprint it here. I will note that I agree with the [Norheim heirs'] counsel that the party wanting to TAKE property must comply specifically, but the party wanting to KEEP property need only substantially comply, and the response of the [Norheim heirs] was enough in this case to preserve their property.

. . . .

And the Owners DID care about the minerals. We know this because they filed their notice and resisted this lawsuit. So the minerals were not abandoned, and the [Larsons] did not become the new Owners.

[¶ 8] In their post-trial brief, the Norheim heirs argued they complied with the requirements for a statement of claim in N.D.C.C. ch. 38–18.1 and their mineral interests were preserved and not abandoned. The Norheim heirs asserted a mineral interest owner acting to preserve its interest prevents extinguishment of the interest by substantially complying with the statutory requirements of N.D.C.C. ch. 38–18.1 and need not strictly comply with those requirements. They claimed they substantially complied with the requirements for filing a statement of claim because the statement was recorded within sixty days of the Larsons' first publication of the notice of lapse, it was recorded by the owners and their representatives in the correct county and provided a legal description of the land and the minerals involved, and it identified the Hans and Thelma Norheim estates and the family bloodlines who would inherit the minerals from the Hans Norheim estate. The Norheim heirs also claimed Olav Oyen and Inge Oyen were acting as representatives or agents when they executed the statement of claim.

[¶ 9] The interpretation and application of a statute is a question of law, which is fully reviewable on appeal. *Johnson v. Taliaferro*, 2011 ND 34, ¶ 9, 793 N.W.2d 804. We have said:

This Court's primary objective in interpreting a statute is to ascertain legislative intent. [*Baukol Builders, Inc. v. County of Grand Forks*, 2008 ND 116, ¶ 22, 751 N.W.2d 191]. Words of a statute are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. If the language of a statute is ambiguous, however, a court may resort to extrinsic aids to interpret the statute. N.D.C.C. § 1–02–39. Statutes must be construed to avoid absurd and ludicrous results. *Stutsman County v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985). *See* N.D.C.C. § 1–02–38(3) and (4). We construe statutes in a practical manner, and we consider the context of statutes and the purpose for which they were enacted. *McDowell v. Gillie*, 2001 ND 91, ¶ 11, 626 N.W.2d 666.

*Bragg v. Burlington Res. Oil and Gas Co. LP*, 2009 ND 33, ¶ 8, 763 N.W.2d 481 (quotations omitted).

[¶ 10] Chapter 38–18.1, N.D.C.C., provides the procedure for the termination of abandoned mineral interests. Because the abandonment proceedings in this case began before the 2007 statutory amendments to N.D.C.C. ch. 38–18.1 became effective on August 1, 2007, and the amendments

were not made retroactive, the 2004 version of N.D.C.C. ch. 38–18.1 applies to this case. *See Sorenson v. Felton,* 2011 ND 33, ¶ 9, 793 N.W.2d 799. "Any mineral interest is, if unused for a period of twenty years immediately preceding the first publication of the notice [of lapse], deemed to be abandoned, unless a statement of claim is recorded in accordance with section 38–18.1–04." N.D.C.C. § 38–18.1–02 (2004). Title to an abandoned mineral interest vests in the surface owner on the date of abandonment. *Id.* Section 38–18.1–04, N.D.C.C., provides the requirements for a statement of claim and says it must:

1. Be recorded by the owner of the mineral interest or the owner's representative prior to the end of the twenty-year period set forth in section 38–18.1–02, or within two years after July 1, 1983, whichever is later. A joint tenant, but not a tenant in common, may record a claim on behalf of oneself and other joint tenants.

2. Contain the name and address of the owner of the mineral interest, and a legal description of the land on, or under which, the mineral interest is located as well as the type of mineral interest involved.

3. Be recorded in the office of the recorder in the county in which the mineral interest is located.

The mineral interest is deemed to be in use at the date of recording, if the recording is made within the time provided by this section.

N.D.C.C. § 38–18.1–04 (2004). However, a mineral interest is not extinguished when the statement of claim is not recorded before the end of the twenty-year period, if the owner of the mineral interest:

1. Owns one or more mineral interests in the county in which the mineral interest in question is located at the time of the expiration of the time period provided in section 38–18.1–04.

2. Has failed to preserve the mineral interest in question.

3. Within sixty days after first publication of the notice [of lapse of mineral interest] provided for in section 38–18.1–06, recorded a statement of claim.

N.D.C.C. § 38–18.1–05 (2004).

[¶ 11] Here, the notice of lapse was first published on May 9, 2007. A statement of claim was not recorded before the twenty-year period expired, but the Norheim heirs recorded a statement of claim on June 27, 2007, which was within sixty days after the first publication of the notice. The statement of claim included a legal description of the property and the type of minerals involved. The claim specifically named Birgit Norheim Oyen, Kjellaug Norheim, Harald Tettum, Inge Oyen, and Olav Oyen as the owners of the mineral interests, but also stated the rightful heirs of Hans and Thelma Norheim were the owners of the mineral interests. Inge and Olav Oyen signed the statement.

[¶ 12] The Larsons argue the statement of claim was not sufficient to preserve the Norheim heirs' interest because it was only signed by Inge and Olav Oyen, they were not determined to be heirs of Hans Norheim, and none of the heirs executed the statement of claim. However, N.D.C.C. § 38–18.1–04 provides that a statement of claim may be recorded by "the owner . . . or the owner's representative." Ch. 38–18.1, N.D.C.C., does not define an "owner's representative" or specify any other requirements for a representative to validly execute the statement on behalf of the owner. The Norheim heirs argue Inge and Olav Oyen were their representatives because the Oyens were

agents authorized to act on the heirs' behalf.

[¶ 13] Agency is the relationship that results when one person, the principal, authorizes another, the agent, to act on their behalf. N.D.C.C. § 3–01–01. Under N.D.C.C. § 3–01–06, an agency may be created and authority conferred by a prior authorization or a subsequent ratification. Consideration is not required to create an agency relationship. N.D.C.C. § 3–01–07. "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing, other than an instrument covered by chapter 41–03 can be given only by an instrument in writing." N.D.C.C. § 3–02–06. Whether an agency relationship exists is generally a question of fact, which is subject to the clearly erroneous standard of review. *Lagerquist v. Stergo*, 2008 ND 138, ¶ 9, 752 N.W.2d 168.

[¶ 14] There was evidence Hans Norheim's heirs, including heirs who were not named as owners on the statement of claim, orally agreed to have Inge and Olav Oyen act as their representatives in recording the statement of claim for the mineral interests. Inge Oyen testified that Birgit Norheim Oyen is his mother and he believed that his mother and the rest of his family, who are the lineal descendants of Hans Norheim's brother, were the owners of the mineral interests when he signed the statement of claim. He testified all of the family members orally agreed that he and Olav Oyen would act on their behalf, he signed the claim on behalf of the whole family, and all of the family members received copies of the statement of claim after it was executed. He testified they did not believe it was necessary to include the names of all of Hans Norheim's heirs and they included Birgit Norheim Oyen, Kjellaug Norheim, and Harald Tettum because they each rep-resented a different part of the family and they intended the statement of claim to cover all three parts of the family. Birgit Norheim Oyen testified that she asked Inge and Olav Oyen, her sons, to record a claim for the minerals. Kjellaug Norheim testified she orally agreed that Inge and Olav Oyen would sign the statement of claim, she asked Inge and Olav Oyen to include her and her family on the claim and to represent whatever interest they might have, and her name represents whatever interest her children have. Harald Tettum testified he and his siblings orally agreed he would be named on the statement of claim and he would represent their portion of the family. He also testified there was an agreement that Inge and Olav Oyen would be the contact persons and would represent the family and he thought recording the claim would protect any mineral interests the family received from Hans and Thelma Norheim. Other family members who were not specifically named on the statement of claim also testified there was an oral agreement for Olav and Inge Oyen to represent the whole family on the statement of claim.

[¶ 15] Although the Larsons do not dispute the Norheim heirs' claim that they orally agreed Inge and Olav Oyen were their agents, they argue Inge and Olav Oyen could not validly act as agents because the statute of frauds applies and there was not a written agency agreement. They contend a mineral interest is deemed abandoned on the date of the first publication of the notice of lapse, title to the mineral interest vests in the surface owners upon the first publication, and the mineral abandonment statute creates a reversionary interest in the prior record owner for sixty days after the first publication of the notice of lapse. The Larsons claim the Norheim heirs only had a reversionary interest for a period of sixty days after the

first publication of the notice of lapse, a reversionary interest involves a transfer of real property, and therefore the statute of frauds applies under N.D.C.C. § 47–10–01. The Larsons contend none of Hans Norheim's actual heirs executed the statement of claim, N.D.C.C. § 47–10–01 requires written authorization for any agent acting on behalf of a party in a transfer of real property, there was no evidence Inge and Olav Oyen were authorized in writing to act as agents for any of the heirs named as owners on the statement of claim, and therefore the statement did not comply with statutory requirements and did not preserve the Norheim heirs' mineral interests.

[¶ 16] However, the Larsons' argument is contrary to the plain language of N.D.C.C. ch. 38–18.1. Section 38–18.1–02, N.D.C.C., states that a mineral interest is deemed to be abandoned if it is unused for twenty years, unless a statement of claim is recorded. That statute also says title in the abandoned minerals vests in the surface owner on the date of abandonment and a mineral interest is not abandoned if a statement of claim is recorded in accordance with N.D.C.C. § 38–18.1–04. The title to the mineral interest vests in the surface owner only if the mineral interest is abandoned. N.D.C.C. § 38–18.1–02. Furthermore, N.D.C.C. § 38–18.1–05 states that the failure to record a statement of claim within twenty years will not cause a mineral interest to be extinguished if the owner meets certain requirements, including recording a statement of claim within sixty days after the first publication of the notice of lapse. When those statutory provisions are read together, they unambiguously provide that a mineral interest does not automatically vest in the surface owners upon the publication of the first notice of lapse and the

mineral owner's interest does not become a reversionary interest. Under those provisions, a mineral interest vests in the surface owners when it is abandoned and it is not abandoned if a statement of claim is recorded within sixty days of the publication of the notice of lapse.

[¶ 17] Citing *Taliaferro*, 2011 ND 34, ¶ 13, 793 N.W.2d 804, the Larsons contend this Court has said a mineral interest is abandoned and vests in the surface owner as of the date of the first publication of the notice of lapse. *Taliaferro*, however, does not support the Larsons' argument. In *Taliaferro* we said, "Taliaferro did not file a timely notice of claim, and his mineral interest was abandoned as of the date of first publication." *Id.* We did not say the mineral interest automatically vested in the surface owner upon publication of the notice of lapse; rather, the mineral interest vested in the surface owner because a statement of claim was not recorded and the interest was abandoned. *Id.* In this case, the Norheim heirs timely recorded a statement of claim as the statutory provisions require and therefore their mineral interests were not abandoned.

[¶ 18] Section 38–18.1–04, N.D.C.C., allows an owner's representative to record a statement of claim and does not require the owner of the mineral interest to record the claim. Because there was not a transfer of real property, the statute of frauds does not apply and the Norheim heirs' agreement to have Inge and Olav Oyen act as their representatives was not required to be in writing. Although the district court did not make a specific finding about whether Inge and Olav Oyen were agents for the Norheim heirs, the court found the Norheim heirs' brief was persuasive and the court's findings are adequate to understand the basis for its decision. We can

readily infer from the court's decision that it found Inge and Olav Oyen were agents and executed the statement of claim as the owners' representatives. The evidence supports the court's findings.

## III

[¶ 19] We conclude the district court did not err in ruling the Norheim heirs' statement of claim complied with statutory requirements and preserved their mineral interests. We affirm the judgment.

[¶ 20] GERALD W. VANDE WALLE, C.J., ALLAN L. SCHMALENBERGER, S.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM.

[¶ 21] The Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of CROTHERS, J., disqualified.